UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
HSH NORDBANK AG NEW YORK BRANCH, as     :
Administrative Agent for Itself and     :
Certain Lenders,                        :        11 Civ. 9405 (DLC)
                          Plaintiff,    :
                                        :        OPINION & ORDER
                                        :        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
            -v-                         :
                                        :
BRIAN N. STREET, individually, and as   :
co-trustee of Brian Street Family Trust :
U/A 8/25/06, LINDA STREET, EVAN J.      :
BRODY, as co-trustee of Brian Street    :
Family Trust U/A 8/25/06 and as co-     :
trustee of Kassko Trust #3, JAMES H.    :
COHEN, MICHELE COHEN, KASSKO TRUST #3,  :
WILLIAM RHEUBAN, as co-trustee of       :
Kassko Trust #3, and ANDREW PHILIP      :
COHEN, as co-trustee of Kassko Trust    :
#3,                                     :
                          Defendants.   :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff:

Justin N. Kattan
SNR Denton US LLP
1221 Avenue of the Americas
New York, NY 10020

For the Judgment Debtor Defendants:

Raymond N. Hannigan
Ross L. Hirsch
2 Park Avenue
New York, NY 10016

For the Transferee Defendants:

Richard E. Berman
Berman, Kean & Riguera, P.A.
2101 W. Commercial Blvd., Ste. 2800
Fort Lauderdale, FL 33309


DENISE COTE, District Judge:

Plaintiff HSH Nordbank AG New York Branch ("HSH") holds a judgment in the amount of approximately $75 million against defendants Brian N. Street ("Street") and James H. Cohen ("Cohen") (collectively "the Judgment Debtors"). To enforce that judgment, HSH brings this action to unwind allegedly fraudulent conveyances made by Street and Cohen in conjunction with the remaining defendants (collectively the "Transferee Defendants"), Linda Street, Michele Cohen, the Brian Street Family Trust U/A 8/25/06 (the "Street Trust") and its co-trustees, and the Kassko Trust #3 (the "Kassko Trust") and its co-trustees. The defendants move to dismiss HSH's complaint for lack of personal jurisdiction. In the alternative, the defendants move to transfer or stay the case. Finally, the defendants move to dismiss HSH's claims under §§ 274 and 276 of the New York Debtor and Creditor Law pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the following reasons, the motion to dismiss for lack of personal jurisdiction brought by Cohen and his affiliated defendants is granted. The motion brought by Street and his affiliated defendants is denied.

<u>BACKGROUND</u>

I.  The Guaranties

On December 15, 2005, HSH agreed to loan up to $192 million to Holly Hill I Associates, Ltd. (the "Borrower"), a single-purpose entity of which the Judgment Debtors and Michael Swerdlow ("Swerdlow") were principals, to finance the development of a residential condominium project in Holly Hill, Florida.  Contemporaneous with the December 15 loan agreement, the Judgment Debtors and Swerdlow executed a personal guaranty in support of their obligations under the loan agreement.  The Judgment Debtors and Swerdlow jointly and separately guaranteed, <u>inter</u> <u>alia</u>, "full payment when due of all interest on the Loan . . . and all expenses (including reasonable counsel fees and expenses) incurred by [HSH] in enforcing any rights under this Guaranty".  In July 2006, as consideration for HSH's consent to certain modifications of the loan agreement, the Judgment Debtors and Swerdlow jointly and severally guaranteed, <u>inter</u> <u>alia</u>, the "payment when due . . . of the outstanding principal balance of the Loan . . . up to but not in excess of $40,000,000," as well as "any and all expenses (including reasonable counsel fees and expenses) incurred by [HSH] in enforcing any rights under this Guaranty".

3

A series of crises hit the Borrower's development project in mid-late 2007 through early 2008, coinciding with a weakening of the local and national real estate market.  See HSH Nordbank AG New York Branch v. Swerdlow, 672 F.Supp.2d 409, 414-15 (S.D.N.Y. 2009).  It rapidly became apparent that the Borrower might default on its loan repayment obligation to HSH.  While HSH advanced additional loan proceeds to the Borrower in January and February 2008, it ceased funding the loan on March 3.  On April 3, HSH accelerated the balance due on the loan and declared all sums outstanding to be immediately due and payable in full.  On April 4, HSH notified the Judgment Debtors that the Borrower had defaulted, and demanded immediate payment of all sums owed under the December 2005 and July 2006 guaranties.  On May 16, HSH notified the Judgment Debtors and Swerdlow that they were in breach of their obligations under the guaranties.

II.  The Conveyances

HSH alleges that Street and Cohen, in anticipation of the Borrower's default and the enforcement of the guaranties, sought in 2007 and 2008 to shield significant funds from HSH's reach by diverting millions of dollars into accounts held jointly with their spouses and into family trusts.  As a result, HSH alleges, Street and Cohen were left insolvent.  The following transfers are alleged in HSH's December 21 complaint.

4

A.   Street

In approximately 2007, the Blackstone Group ("Blackstone"), a prominent private equity firm, acquired RGIS, a company in which Street had a substantial interest.  Street received $10-15 million in the transaction, funds which flowed to an entity called Impala RGIS Holdings LLC ("Impala"), a Connecticut LLC in which Street held an 8.5% membership interest.  In 2008, Street individually received $16,347,449 in cash distributions from Impala.  Street has testified at deposition that these funds were transferred into bank accounts held by Brian and Linda Street as tenants by the entirety and by the Street Trust. Street has produced bank statements indicating that on March 27, 2008, $4,377,305.65 was deposited into a joint account held by Brian and Linda Street at Bear Stearns in New York from a Wachovia Bank account in Connecticut.  On April 15, additional funds were transferred to two other joint accounts:  $1 million into a Bank of American International Account, and $3,377,287.56 into a Morgan Stanley account located in New York.  An additional $1,879,510.40 was transferred into the Morgan Stanley account in June.

In late 2007, Street held $2.4 million in an individual Bear Stearns account and $5.1 million in a Bear Stearns account with Linda Street as joint tenants.  Starting in late 2007,

however, Street depleted these accounts through transfers into a New York Bear Stearns account held by the Street Trust and to the Morgan Stanley account held with Linda Street in a tenancy by the entirety.

### B. Cohen

Cohen also held a substantial interest in RGIS through an 8.5% membership interest in Impala. In either 2007 or 2008, Cohen transferred approximately half of his interest in Impala to the Kassko Trust. Cohen's children are the beneficiaries of the Kassko Trust. As a result of the sale of RGIS to Blackstone, the Kassko Trust received $11,389,478 in cash distributions in 2008.

By virtue of Cohen's remaining stake in Impala, Cohen individually received $10,987,685 in cash distributions from Impala in 2008. Cohen transferred some of this money to bank accounts held jointly with Michele Cohen as tenants by the entirety, as well as to the Kassko Trust and other family trusts. Over seven million dollars, for example, was transferred into a Smith Barney account which James and Michele Cohen hold jointly as tenants by the entirety.

III.  The Judgment

On July 3, 2008, HSH filed a complaint in this District against the Judgment Debtors and Swerdlow, seeking to enforce the guaranties.  See HSH Nordbank AG New York Branch v. Swerdlow et al., No. 08 Civ. 6131 (DLC).  On November 23, 2009, the Court granted HSH's motion for summary judgment on the defendants' liability under the guarantees.  672 F.Supp.2d at 420.  On March 26, 2010, after additional briefing on damages, attorneys' fees, costs, and interest owed by the defendants, the Court entered judgment against the defendants jointly and severally in the amount of $75,623,164.62 (the "Judgment").  The Judgment was affirmed by the Court of Appeals on May 4, 2011.  421 Fed.Appx. 70 (2d Cir. 2011).

On May 14, 2010, the Court granted HSH's motion pursuant to 28 U.S.C. § 1963 to register the Judgment in the United States District Court for the Southern District of Florida.  On May 18, HSH registered the Judgment in the Southern District of Florida (the "Florida Action").  See HSH Nordbank AG New York Branch v. Street et al., No. 10 Civ. 21611 (UU).

HSH subsequently settled with Swerdlow, filing a stipulation of dismissal and acknowledgement of partial satisfaction of judgment, which the Court so-ordered on February 28, 2011.  HSH has engaged in discovery both in this District

and in the Florida Action to locate and execute upon assets of
the Judgment Debtors and satisfy the Judgment.


PROCEDURAL HISTORY

On December 21, 2011, HSH filed its complaint in this
action against the Judgment Debtors and the Transferee
Defendants.  The Judgment Debtors moved to dismiss HSH's
complaint, or in the alternative to stay or transfer the case,
on February 29, 2012.  On the same date, the Transferee
Defendants separately moved to dismiss the complaint, or in the
alternative to stay or transfer the case.[1]  The defendants'
February 29 Motion became fully submitted on April 24.


DISCUSSION

The Transferee Defendants have moved to dismiss HSH's
complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal
jurisdiction.  The Judgment Debtors argue that if the Transferee
Defendants' Rule 12(b)(2) motion is granted, then HSH's claims
against the Judgment Debtors must also be dismissed under Fed.

---

[1] The Judgment Debtors and the Transferee Defendants seek to
incorporate by reference a number of arguments made in each
other's briefs and otherwise generally to render their motions
complementary.  For simplicity of reference, therefore, this
Opinion will refer to the February 29 motions submitted by the
Judgment Debtors and by the Transferee Defendants as the
"February 29 Motion".

R. Civ. P. 12(b)(7) for failure to join indispensable parties. All defendants move in the alternative to dismiss the case under (1) the first-filed rule, or (2) for improper venue; or otherwise to transfer this case to the Southern District of Florida or to stay this case pending resolution of parallel proceedings in Florida.  Finally, all defendants move to dismiss HSH's claims under New York Debtor & Creditor Law §§ 274 and 276 for failure to state a claim upon which relief may be granted.

I.  Personal Jurisdiction

     The Transferee Defendants move to dismiss HSH's complaint for lack of personal jurisdiction.[2]  "Where, as here, a district court . . . relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a <u>prima facie</u> showing of personal jurisdiction." <u>Southern New England Telephone Co. v. Global NAPs Inc.</u>, 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted).  "This showing may be made through the plaintiff's own affidavits and supporting

---

[2] Street, Cohen, Linda Street, and Michele Cohen are all citizens and residents of Florida.  The Street Trust is a trust formed under Florida law, the co-trustees of which are Street and Evan J. Brody ("Brody"), a Florida citizen and resident.  The Kassko Trust is a trust formed under Florida law, the co-trustees of which are Brody, William J. Reuben, a citizen and resident of Virginia, and Andrew Philip Cohen, a citizen and resident of Florida.

materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Id. (citation omitted).  The pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor.  Id.  On the other hand, a court "will not draw argumentative inferences in the plaintiff's favor."  In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 93 (2d Cir. 2008) (citation omitted).  Furthermore, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would "lack the factual specificity necessary to confer jurisdiction."  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).  In resolving Rule 12(b)(2) motions, a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Id. (citation omitted).

In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).  A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.  Fed. R. Civ. P. 4(k)(1)(a).  "If the exercise of jurisdiction is appropriate under [the state's statutes], the court then must decide whether such exercise comports with the

requisites of due process." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted).


A.  Linda Street and the Street Trust

HSH argues that this Court can exercise personal jurisdiction over Linda Street and the Street Trust and its co-trustees (collectively, with Brian Street, the "Street Defendants") pursuant to § 302(a)(1) of New York's long-arm statute. See N.Y. C.P.L.R. § 302(a)(1). Section 302(a)(1) authorizes New York courts to exercise personal jurisdiction over non-domiciliaries who "transact[] any business within the state . . . ." Id. "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (citation omitted). As to § 302(a)(1)'s second requirement, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial

relationship, between the claim asserted and the actions that occurred in New York." Id. at 66 (citation omitted).  Section 302(a)(1)'s requirements may be satisfied by a single act within New York.  Id. at 62.

The alleged fraudulent conveyances at issue in the claims against the Street Defendants consist of millions of dollars in transfers into New York bank accounts held by Linda Street jointly with Brian Street and by the Street Trust.  The effect of the transfers was to render Street insolvent and frustrate his creditors, thereby giving rise to HSH's claims under the New York Debtor and Creditor Law.  The use of New York bank accounts to shelter significant and repeated transfers of funds constitutes the "transaction of business" necessary to satisfy the first requirement of § 302(a)(1).  See, e.g., Jain v. T&C Holding Inc., No. 10 Civ. 1006 (RMB), 2011 WL 814659, at 5 (S.D.N.Y. Mar. 3, 2011); Gulf Coast Dev. Group, LLC v. Lebror, No. 02 Civ. 6949 (NRB), 2003 WL 22871914, at *3-*4 (S.D.N.Y. Dec. 4, 2003); Nova Int'l, Inc. v. American Express Bank, Ltd., No. 94 Civ. 8536 (DC), 1996 WL 39317, at *7 (S.D.N.Y. Jan. 31, 1996).  See also, Licci, 673 F.3d at 65 n.14 ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action." (emphasis supplied) (citation

omitted)).  Likewise, HSH's claims against the Street Defendants arise directly out of the transfer of funds into the Street Defendants' New York accounts; it is these very transfers that HSH seeks to unwind.  Because the requirements of § 302(a)(1) are met, this Court may exercise personal jurisdiction over the Street Defendants.[3]

The defendants argue that the Street Defendants' maintenance of New York bank accounts provides insufficient basis for the exercise of personal jurisdiction.  Regardless of whether the "mere maintenance" of a New York bank account "is not standing alone, a sufficient basis to subject a foreign defendant to personal jurisdiction under § 302(a)(1)", see Licci, 673 F.3d at 62 (citation omitted), § 302(a)(1) is

---

[3] The exercise of personal jurisdiction must also "comport with constitutional due process principles." Licci, 673 F.3d at 60. The defendants do not raise constitutional objections to the exercise of personal jurisdiction over the Street Defendants. In any event, the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous:  "New York decisions, at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard:  whether the defendant's conduct constitutes 'purposeful availment'." Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 169 (2d Cir. 2010) (citation omitted).  See also Licci, 673 F.3d at 61 n.11 ("Th[e] similarity of state-law and constitutional standards appears particularly evident with respect to [§ 302(a)(1)][.]").

satisfied where, as here, the plaintiff's cause of action arises directly from the use of New York accounts.[4]

The defendants' reliance upon Tamam v. Fransabank SAL, 677 F.Supp.2d 720 (S.D.N.Y. 2010), is unavailing.  Dismissal for lack of personal jurisdiction was based upon the plaintiffs' failure to allege specific transfers through New York accounts.[5]

Finally, the defendants have submitted declarations from Street and Brody, stating that the Street Trust was created by Street's father, Leon Street, and is funded through transfers from Leon Street's estate, including the specific transfers identified in HSH's complaint.  At his deposition, however,

---

[4] Societe Generale v. Florida Health Sci. Ctr, No. 03 Civ. 5615 (MGC), 2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003), cited by defendants in a footnote, states broadly that "maintenance of a bank account in New York is usually insufficient to confer personal jurisdiction over a non-domiciliary defendant, even in suits arising from the account."  2003 WL 22852656, at *4.  The present case is easily distinguishable.  In Societe Generale, the plaintiff's claim did not arise directly out of the transfer, as it does here.

[5] The defendants also argue that "passive receipt of allegedly stolen funds, absent evidence of knowledge or intent, is an inadequate basis for the court's exercise of personal jurisdiction[.]"  Devinsky v. Kingsford, No. 05 Civ. 2064 (PAC), 2008 WL 857525, at *5 (S.D.N.Y. Mar. 31, 2008); see also Langenberg v. Sofair, No. 03 Civ. 8339 (KMK), 2006 WL 2628348, at *4 (S.D.N.Y. Sept. 11, 2006).  Devinsky and Langenberg both dealt exclusively with § 302(a)(2) of New York's long-arm statute, which requires "a tortious within the State", not § 302(a)(1), upon which personal jurisdiction over the Street Defendants is based.

14

Street stated that distributions from his Impala interest were "quite possibly" transferred to the Street Trust.  Street also stated that he and Linda Street established the Street Trust "when we started to take money in real estate back in the glory days" and that they "decanted a prior trust into the Street Family Trust."  The self-serving statements in the declarations of Street and Brody, contradicting Street's earlier deposition testimony, are patently insufficient to defeat HSH's <u>prima</u> <u>facie</u> showing of personal jurisdiction over the Street Trust.

B.  Michele Cohen and the Kassko Trust

HSH asserts personal jurisdiction over Michele Cohen and the Kassko Trust and its co-trustees (collectively, with James Cohen, the "Cohen Defendants") pursuant to § 302(a)(3)(ii) of New York's long-arm statute.[6]  Section 302(a)(3)(ii) provides for personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and

---

[6] HSH does not allege that the transfers made by Cohen to accounts held jointly with Michele Cohen and to the Kassko Trust were made into New York bank accounts, and does not assert personal jurisdiction over the Cohen Defendants pursuant to § 302(a)(1).

derives substantial revenue from interstate or international commerce[.]" N.Y. C.P.L.R. § 302(a)(3)(ii).

> In order to establish jurisdiction under
> [§ 302(a)(3)(ii)], a plaintiff is . . . required to
> demonstrate that (1) the defendant's tortious act was
> committed outside New York, (2) the cause of action
> arose from that act, (3) the tortious act caused an
> injury to a person or property in New York, (4) the
> defendant expected or should reasonably have expected
> that his or her action would have consequences in New
> York, and (5) the defendant derives substantial
> revenue from interstate or international commerce.

Penguin Group (USA) Inc. v. American Buddha, 609 F.3d 30, 35 (2d Cir. 2010).

HSH's allegations are insufficient to support personal jurisdiction over the Cohen Defendants pursuant to § 302(a)(3)(ii). The link between the allegedly tortious acts committed by the Cohen Defendants out of state and any injury to HSH in New York is too attenuated to have been reasonably foreseeable. HSH alleges fraudulent conveyances to the Cohen Defendants in 2007 and 2008 generally. HSH did not file suit in this District against the Judgment Debtors until July 2008, and a judgment was not entered against Cohen until 2010. HSH has not shown that it was reasonably foreseeable at the time of the transfers that their effect would be to frustrate the enforcement of a New York judgment.

HSH relies exclusively upon Bank of Communications v. Ocean Development of America, Inc., No. 07 Civ. 4628 (TPG), 2010 WL

16

768881 (S.D.N.Y Mar. 8, 2010).  In Bank of Communications, the
plaintiff had filed its complaint against the transferor
defendant in New York state court nearly a year before the
conveyance at issue.  Id. at *2.  By contrast, the transfers at
issue here appear to have preceded any New York suit being filed
against the Judgment Debtors.

In the alternative, HSH argues that the New York forum
selection clauses in the guaranties signed by the Judgment
Debtors are enforceable against the Cohen Defendants.  Under New
York law, a forum selection clause may be enforced against a
non-signatory who is "closely related" to the dispute such that
enforcement of the forum selection clause against him is
foreseeable.  Firefly Equities, LLC v. Ultimate Combustion,
Inc., 736 F.Supp.2d 797, 799 (S.D.N.Y. 2010).  See also Lipcon
v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th
Cir. 1998).  "[T]he enforcement of the forum selection clause
against the non-party must have been foreseeable prior to suit,
which implies that the non-signatory must have been otherwise
involved in the transaction in some manner."  Recurrent Capital
Bridge Fund I, LLC v. ISR Systems and Sensors Corp., No. 12 Civ.
772 (SAS), 2012 WL 2402621, at *5 (S.D.N.Y. June 25, 2012).

Here, HSH does not allege any connection between the Cohen
Defendants and the guaranties signed in 2005 and 2006 by James
Cohen.  There is no allegation that the Cohen Defendants knew or

were put on notice about the forum selection clauses in these guaranties.  HSH does not provide any basis to conclude that it would have been reasonably foreseeable that the forum selection clauses could be enforced by or against Michele Cohen and the Kassko Trust.

HSH's claims against Michele Cohen and the Kassko Trust and its co-trustees are therefore dismissed for lack of personal jurisdiction.  Additionally, HSH does not dispute that Michele Cohen and the Kassko Trust and its co-trustees are indispensable parties with respect to its claims against Cohen.  Accordingly, Cohen's Rule 12(b)(7) motion is also granted.

II.  Defendants' Remaining Grounds

Because the defendants' Rule 12(b)(2) motion is denied with respect to the Street Defendants, it is necessary to consider the remaining grounds for dismissal upon which the defendants bring their motion.

A.  The First-Filed Rule and Venue

The defendants argue that the instant action should be stayed by application of the "first-filed rule".  HSH filed a "Motion to Commence Supplementary Proceedings" ("Supplementary Motion") in the Florida Action on December 20, 2011, one day before HSH filed its complaint in this action.  The

Supplementary Motion seeks to unwind the same allegedly fraudulent conveyances at issue here.

The first-filed doctrine does not apply to enforcement proceedings.  Since this Court entered judgment against the Judgment Debtors in 2010, discovery in aid of enforcement has proceeded both in this Court and in the Southern District of Florida.  To enforce its judgment, HSH is entitled to proceed simultaneously in as many jurisdictions in which assets may be located.  The Supplementary Motion and this suit were filed by the same party -- HSH -- within one day of each other; the Court is not called upon to choose, as is typically the case in the context of a "first-filed" dispute, which forum choice should be honored.

Even if the first-filed doctrine were to apply, however, the "balance of convenience" favors this forum for the same reasons the defendants' motion to transfer venue pursuant to § 1404 is denied.  "As a general rule, where there are two competing lawsuits, the first suit should have priority." Employers Ins. of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 274-75 (2d Cir. 2008) (citation omitted).  "This rule embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum."  Id. at 275 (citation omitted).  But, there are two recognized exceptions to the

first-filed rule:  (1) "where the balance of convenience favors the second-filed action", and (2) "where special circumstances warrant giving priority to the second suit".  <u>Id.</u>  "[T]he factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)."  <u>Id.</u> (citation omitted).

The factors to be considered in connection with a motion to transfer include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

<u>Id.</u> (citation omitted).  These factors strongly favor a New York forum for hearing HSH's claims against the Street Defendants. HSH has indicated that it wishes to proceed with its claims in this forum.  More significantly, given that HSH's claims against the Street Defendants are based upon transfers into New York bank accounts, these claims present a substantial nexus with New York.

The defendants' motion to dismiss for improper venue is denied for similar reasons.  "[F]or venue to be proper, significant events or omissions material to the plaintiff's

claim must have occurred in the district in question, even if other material events occurred elsewhere." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005). Venue is indisputably proper in this District. Judgment was entered against the Judgment Debtors in this District, and HSH's suit seeks to enforce that Judgment. Moreover, the transfers at the heart of HSH's fraudulent conveyance claims against the Street Defendants were sent to New York accounts.


B.  Request for a Stay

The defendants also request in the alternative that the Court stay this action pending resolution of HSH's fraudulent conveyance claims in the Florida Action. "[D]istrict courts . . . may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." WorldCrisa v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (citation omitted).

A stay is not warranted in this action. HSH seeks to enforce an approximately $75 million judgment against the Judgment Debtors. That judgment was entered in March 2010, and still has not been satisfied. A stay of this action would occasion further delay. HSH has, moreover, represented that it will not engage in duplicative discovery and will forego any

enforcement proceedings in Florida that are adjudicated in this
Court.  HSH may pursue its fraudulent conveyance claims against
the Street Defendants in New York while, if it so chooses,
pursuing its fraudulent conveyance claims against the Cohen
Defendants in Florida.  HSH's respective claims against the
Street Defendants and the Cohen Defendants involve separate
transfers to distinct parties; no inconvenience or inefficiency
will result from the bifurcation of enforcement proceedings.


          C.  New York Debtor and Creditor Law
          Finally, the defendants move pursuant to Rule 12(b)(6),
Fed. R. Civ. P., to dismiss HSH's claims under the New York
Debtor and Creditor Law ("DCL") §§ 274 and 276.  The defendants
appear to have abandoned this argument, as they do not address
it in their reply briefs.  At any rate, the defendants' Rule
12(b)(6) motion is unavailing.
          Under the pleading standard set forth in Rule 8(a)(2), a
complaint must include a "short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ.
P. 8(a)(2).  "[A] plaintiff is required only to give a defendant
fair notice of what the claim is and the grounds upon which it
rests."  Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir.
2006).  Rule 8 is fashioned in the interest of fair and
reasonable notice, not technicality, and therefore is "not meant

to impose a great burden upon a plaintiff." <u>Dura Pharms., Inc.</u> <u>v. Broudo</u>, 544 U.S. 336, 347 (2005).

A trial court considering a Rule 12(b)(6) motion must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." <u>LaFaro v. New York</u> <u>Cardiothoracic Group, PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted). The court is "not bound to accept as true legal conclusions couched as factual allegations," <u>id.</u> at 1950-51, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

Under DCL § 274, "a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration'" and, <u>inter</u> <u>alia</u>, the transferor is "rendered insolvent" by the transfer or "the transferor is engaged in or is about to engage in a business transaction for which its

remaining property constitutes unreasonably small capital[.]"
In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005).[7]

HSH has alleged that the transfers described in its
complaint were executed during a period in which the Borrower's
development project was foundering, presenting a significant
risk that the Borrower, of which the Judgment Debtors were
principals, would default and HSH would demand payment on the
guaranties.  They have also alleged that Street was in essence
rendered insolvent by the transfer.  These allegations are
sufficient to constitute a constructively fraudulent conveyance
under DCL § 274.

DCL § 276 provides:  "Every conveyance made . . . with
actual intent, as distinguished from intent presumed in law, to
hinder, delay, or defraud either present or future creditors, is
fraudulent as to both present and future creditors."  DCL § 276.
"To prove actual fraud under § 276, a creditor must show intent
to defraud on the part of the transferor."  In re Sharp, 403
F.3d at 56 (citation omitted).  "Where actual intent to defraud

_____

[7] The existence of "fair consideration"

> is profitably analyzed as follows: (1) the recipient
> of the debtor's property must either (a) convey
> property in exchange or (b) discharge an antecedent
> debt in exchange; and (2) such exchange must be a
> 'fair equivalent' of the property received; and (3)
> such exchange must be in 'good faith.'

In re Sharp, 403 F.3d at 53 (citation omitted).

creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." Id. (citation omitted).

> Due to the difficulty of proving actual intent to
> hinder, delay, or defraud creditors, the pleader is
> allowed to rely on "badges of fraud" to support his
> case, i.e., circumstances so commonly associated with
> fraudulent transfers that their presence gives rise to
> an inference of intent.

Wall St. Assoc. v Brodsky, 257 A.D.2d 526, 529 (1st Dep't 1999). So-called "badges of fraud" include "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; and retention of control of the property by the transferor after the conveyance." In re Sharp, 403 F.3d at 56 (citation omitted); see also United States v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994).

HSH has alleged "badges of fraud" sufficient to infer fraudulent intent. These include a close relationship between the parties to the transfers, lack of consideration for the transfers, and the retention of control by the Judgment Debtors over the transferred funds and their continuing benefit from these funds. The defendants' motion to dismiss HSH's fraudulent conveyance claim under DCL § 276 is denied.

CONCLUSION

The defendants' February 29 Motion is granted in part.   The

Clerk of Court shall dismiss James H. Cohen, Michele Cohen, the

Kassko Trust #3, William Rheuban, and Andrew Philip Cohen as

defendants from this case.

SO ORDERED:

Dated:    New York, New York
          July 18, 2012

                                  _____
                                     DENISE COTE
                            United States District Judge